IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-01815-PAB

PATRICK C. MORRIES,

    Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

    Defendant.
_____

# ORDER
_____

This matter comes before the Court on the Complaint [Docket No. 1] filed by plaintiff Patrick Morries, pro se, on June 21, 2019. Plaintiff seeks review of the final decision of the defendant (the "Commissioner") denying his claim for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[1]

## I. BACKGROUND

On July 11, 2014, plaintiff applied for social security benefits under Title II and Title XVI of the Act. R. at 51. Plaintiff alleged a disability onset date of May 30, 2012. *Id.* After his claims were initially denied on March 2, 2015, plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on October 5, 2016. *Id.*

On January 11, 2017, the ALJ issued a decision denying plaintiff's claim. R. at

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

70. The ALJ found that plaintiff had not engaged in substantial gainful activity since the application date and had the following severe impairments: degenerative disk disease, obesity, diabetes mellitus, obstructive sleep apnea, gout, migraines, major depressive order, and social anxiety. R. at 53. The ALJ also found that plaintiff had nonsevere hypertension, gastroesophageal reflux disease, and carpal tunnel syndrome. R. at 54. The ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, or 416.926. *Id.* Ultimately, the ALJ concluded that plaintiff had the residual functional capacity ("RFC") to perform light work with the following qualifications:

> the claimant can only occasionally bend (stoop). He is also limited to work that can be learned in six months or less [and] have only occasional work interactions with the public.

R. at 58. The ALJ determined that plaintiff was able to perform past relevant work as a data entry clerk, R. at 66, and found that other jobs existed in significant numbers in the national economy that plaintiff could perform. R. at 69.

On October 16, 2017, the Appeals Council, after reviewing additional evidence submitted by plaintiff, found that the evidence would not change the ALJ's decision and denied plaintiff's request for review. R. at 1.

## II. STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel*

*v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Because plaintiff is proceeding pro se, his "materials are entitled to a liberal reading," although a court may not act as a " [pro se] litigant's advocate." *Velasquez v. Astrue*, 301 F. App'x 778, 780 (10th Cir. 2008) (unpublished) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)) (construing a pro se litigant's materials liberally in the social security context).

### III. THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period

of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and

work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV. DISCUSSION

Plaintiff raises eleven objections to the ALJ's decision: (1) he still "suffer[s] from confusion and it affected my case"; (2) "[i]ncomplete medical information was used"; (3) "Administrative Judge made crucial mistakes"; (4) "[j]udgment [sic] based on inaccurate information"; (5) "Administrative Judge may have abused her discretion"; (6) "Appeals Council made mistakes and rubberstamped decision"; (7) "[t]he appeals council did not answer my correspondence for three years"; (8) "[c]ase has taken forever"; (9) "Consultative Examination under unusual circumstances"; (10) "Social Security's conclusion would not be accepted by a reasonable person"; and (11) "[i]ncompetent lawyer" Docket No. 18 at 2. The Court construes objections one, two, three, four, five, nine, and ten as plaintiff arguing that the ALJ's RFC decision was not supported by substantial evidence and addresses those objections together. The remaining objections, six, seven, eight, and eleven, are addressed separately.

### A. RFC Determination

Objections one, two, three, four, five, nine, and ten all are a different way of asking whether the ALJ's RFC determination was supported by substantial evidence. *See, e.g.,* Docket No. 18 at 3 (arguing that plaintiff still suffers from confusion); *see also*

5

*id.* at 4 (contending that the ALJ misinterpreted plaintiff's ability to walk and plaintiff's back pain).  The Court finds that there is substantial evidence in the record for the ALJ's conclusion.

The ALJ first determined that plaintiff's medical impairments could cause the alleged symptoms, just not at the intensity, persistence, or limiting effects that plaintiff alleged.  R. at 59.  As to plaintiff's degenerative disc disease, the ALJ found that plaintiff had "deep tendon reflexes within normal limits," "normal sensation in both lower and upper extremities," "full strength in all lumbar areas," and "normal gait and ability to heel and toe walk."  *Id.*   Regarding plaintiff's diabetes mellitus, the ALJ found that plaintiff "had mild tender dorsum of the feet but had no other limitations," he had "no wheezes, rales, or rhonchi and a regular rate and rhythm," and had "normal gait, no edema, and was found capable of exercise."  R. at 60.  Examining plaintiff's sleep apnea, the ALJ found that plaintiff smoked "six to eight cigars per week," an exam "showed no abnormalities except for a hesitant gait due to his weight," and a "48-hour Holter monitor . . . showed he was 'essentially normal.'"  *Id.*

As to plaintiff's migraines and gout, exams showed full motor strength and full sensory abilities and that medication cleared his gout.  R. at 61.  Regarding plaintiff's mental health, the ALJ found that several mental status exams over the course of nearly two years "were normal."  R. at 61-62.  The ALJ also examined plaintiff's obesity in combination with his other physical limitations, finding that plaintiff did not adhere to weight loss recommendations of his doctors and, as such, his "refusal is inconsistent with his allegations of disabling symptoms."  R. at 62.  Finally, the ALJ analyzed plaintiff's activities of daily living, concluding that plaintiff eats breakfast and dinner,

watches TV, and does chores, such as laundry, vacuuming, doing dishes, dusting, running errands, and preparing meals.  *Id.*

Plaintiff primarily points to hearing testimony and what he argues is a misapplication of the medical evidence in the record to dispute the findings of the ALJ. Specifically, plaintiff argues that he told the ALJ he had difficulty concentrating, Docket No. 18 at 3, and that he often has to sit on the floor in grocery stores to recuperate and rest.  *Id.* at 8-9.  Additionally, plaintiff argues that he never has smoked as many cigars as the ALJ concluded, some medical evidence is missing, there is no evidence to suggest he can walk a mile, the ALJ incorrectly determined that his back pain is minimal, there is no evidence that he can pay bills or use a check book, and the ALJ was not allowed to interpret an MRI.  Docket No. 18 at 3-9.

Plaintiff essentially asks the Court to reweigh the evidence in the record, arguing that the evidence he puts forward, and the alleged misreading of the record, demonstrate that the ALJ's conclusion was incorrect.  However, the Court is not permitted to "reweigh the evidence or retry the case."  *Flaherty*, 515 F.3d at 1070. Rather, the Court must examine the record to determine whether substantial evidence supports the ALJ's decision.  *Id.* "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.

The record demonstrates that the ALJ was justified in her RFC determination and that there is substantial evidence to support it.  Numerous reports show that plaintiff's range of motion, gait, and strength are normal.  *See, e.g.*, R. at 359

7

("Extremities have full range of motion and are non tender."); R. at 371 (noting "5/5" motor strength and full extension of the lumbar spine); R. at 728 (finding that there was "no clubbing, cyanosis, or edema" of the extremities, and that upper and lower extremities motor strength was "normal"); R. at 760 (stating that gait was "hesitant" due to weight, but otherwise normal). Additionally, regarding plaintiff's mental health, exams over a long period of time consistently concluded that plaintiff's mental health status was normal. *See* R. at 606 (noting that mental status was within normal limits); R. at 625 (same); R. at 667 (same); R. at 675 (same); R. at 677 (same); R. at 678 (same); R. at 679 (same); R. at 680 (same). Thus, while plaintiff argues that his testimony describes his weakness and motor strength due to his need to sit while grocery shopping and that he cannot walk a mile, the evidence in the record supports the ALJ's conclusion that plaintiff's symptoms were not as intense or as persistent as he testified. Additionally, although plaintiff contends that his hearing testimony regarding confusion demonstrates that the ALJ's determination is incorrect, the record evidence consistently describes plaintiff's mental status as normal.

Plaintiff's argument regarding his smoking habits and his back pain is also unpersuasive. The ALJ cited the record, R. at 60, which states that plaintiff smokes six to eight cigars per week. R. at 651 ("Client is going in for back surgery after a pulmonary test (he smokes 6-8 cigars per week)."). More importantly, however, is that the ALJ did not make a disability determination based on plaintiff's smoking habits, but instead discussed it in reference to his physical condition, which, as the Court explained above, is supported by substantial evidence in the record. As to plaintiff's back pain, the ALJ did not find that plaintiff's back pain is "very minimal," but, rather, at the time of

8

exam of which she was analyzing, plaintiff's back pain "*had* 'been very minimal.'" R. at 59 (emphasis added). The medical record says exactly that: "He states recently his back pain has been very minimal." R. at 372.

Regarding plaintiff's activities of daily living, the ALJ examined the report of Dr. Meredith Campbell, which states that plaintiff can "do some chores," he can "watch TV and read," "he can do laundry, vacuum, do dishes, prepare simple meals, dust furniture, and run short errands," as well as "perform[] all necessary self-care activities." R. at 590-91. Plaintiff argues that his wife pays the bills and balances the checkbook and that he has "not been able to do either for five years or more." Docket No 18 at 5. But that does not contradict the ALJ's finding that plaintiff is able to engage in several activities of daily living. Indeed, plaintiff testified at the hearing that he takes his wife and son to work. R. at 118. He said he can load the dishwasher, although "it takes me two to three times longer." *Id.* The Court will not reweigh the evidence or determine credibility. Even if plaintiff does not use or balance a checkbook, substantial evidence supports the ALJ's conclusion on plaintiff's activities of daily living.

Finally, as to plaintiff's argument regarding the missing medical evidence and the ALJ's "interpretation" of the MRI, the Court finds these arguments unpersuasive. First, plaintiff does not discuss what evidence in those missing medical records contradicts the ALJ's conclusion. *See* Docket No. 18 at 3-4. Additionally, he states that he provided the information "on the day of [his] hearing" and during his "case review." *Id.* The Appeals Council reviewed the additional information and found that it would not change the decision of the ALJ. R at 1-2. Plaintiff fails to point the Court to the medical evidence that contradicts the ALJ or the Appeals Council's conclusion. Finally, the ALJ

9

did not interpret the MRI.  Rather, the ALJ gave greater weight to the determination of the initial radiologist over the interpretation of plaintiff's father because plaintiff's father's interpretation was not "corroborated by any physical exams" and "do[es] not correctly interpret the mild to moderate findings in the actual MRI referenced."[2]  R. at 64.

As a result, the Court concludes that there is substantial evidence in the record for the ALJ's RFC determination.[3]

## B.  Remaining Objections

*1. Objections Six, Seven, and Eight*

Plaintiff argues that the "Appeals Council made mistakes and rubberstamped decision," "[t]he appeals council did not answer my correspondence for three years," and the "[c]ase has taken forever."  Docket No. 18 at 2.

First, as to the Appeals Council's "mistakes," plaintiff contends that the Appeals Council "threw out" evidence from Saint Anthony's emergency room and "[did not contact] me or Saint Anthony's for clarification and neither the Administrative Judge nor the Appeals Council chose to address my three different forms of dizziness at all."  *Id.* at 6.

---

[2] Plaintiff argues that the consultative exam was taken under "unusual circumstances."  Docket No. 18 at 8-9.  Even if plaintiff is correct that a consultative exam should not have been given, the fact that the exam occurred does not undermine the Court's conclusion that the ALJ's decision was supported by substantial evidence.

[3] In reply, plaintiff suggests that there are not enough jobs in the national economy at step five.  *See* Docket No. 22 at 6 ("The jobs listed are rare, hard to find, and even the ALJ questioned if at least one of the jobs still existed[]." (emphasis omitted)).  The ALJ found 53,000 jobs in the national economy for plaintiff's RFC, and plaintiff does not argue why these numbers are insignificant.  *See Botello v. Astrue*, 376 F. App'x 847, 851 (10th Cir. 2010) (unpublished) (affirming ALJ's step five analysis because there were 67,250 jobs available in the national economy).

The Court finds these arguments unpersuasive. The Appeals Council did not "throw out" plaintiff's additional evidence. Rather, the Appeals Council determined that there was not a "reasonable probability" that the evidence "would change the outcome of the decision" and, as a result, "did not consider and exhibit this evidence." R. at 2. Plaintiff does not explain how the evidence would change the result of the ALJ's decision, particularly given the substantial evidence in the record and the lack of contradicting evidence in the Saint Anthony's documents. *See* R. at 80-81, 95-96 (noting fatty liver and lumbar misalignment). As to the other evidence, the Appeals Council determined that the evidence was not from the relative period. While Social Security Regulation 20 C.F.R. § 404.970(b) permits a claimant to submit new and material evidence to the Appeals Council when seeking review of an ALJ's decision, the evidence must "relate[] to the period on or before the date of decision." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). If the evidence is material, and from the relevant time period, a reviewing court must consider the evidence during its review. *Id.* at 858-89. However, this other evidence the Appeals Council did not review was from March 24, 2017 to April 5, 2017, several months after the ALJ's January 11, 2017 decision and, as a result, this evidence does not "relate[] to the period on or before the date of decision," and was not properly before the Appeals Council. *O'Dell*, 44 F.3d at 858.

As to the delay in the Appeals Council's decision, plaintiff does not argue that he was prejudiced by the delay, only that it took a significant period of time. Additionally, the Appeals Council granted several extensions. R. 8-10. As a result, the delay is not grounds for reversal or remand. Plaintiff's argument that the "[c]ase has taken forever,"

Docket No. 18 at 7, fails for the same reason; other than noting that the case has been going on for a number of years, he fails to explain how he was prejudiced and places blame on his counsel, not on defendant.

### 2. *Objection Eleven*

Plaintiff argues that he was represented by an "[i]ncompetent lawyer." Docket No. 18 at 10-11. He argues that other lawyers have told him that his attorney "did not know what he [was] doing" and they heard that his attorney "is terrible." *Id.* at 10. However, "in civil cases . . . ineffective assistance of counsel is not a basis for appeal or retrial." *Nelson v. Boeing Co.*, 446 F.3d 1118, 1119 (10th Cir. 2006) (citation omitted). Rather, if counsel "performs below professionally acceptable standards, with adverse effects on the client's case, the client's remedy is not reversal, but rather a legal malpractice lawsuit against the deficient attorney." *Id* (citations omitted). As a result, the alleged poor performance of plaintiff's counsel is not grounds for reversal or remand.

## V. CONCLUSION

For these reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is **AFFIRMED**. It is further

**ORDERED** that this case is closed.

DATED November 30, 2020.

                                        BY THE COURT:

                                        PHILIP A. BRIMMER
                                        Chief United States District Judge